## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JANE DOE MOTHER, as guardian, and on
behalf of JANE DOE DAUGHTER, her
minor child,

Plaintiff,

v.                                           No. CIV 00-163 BB/LFG

THE CITY OF BELEN SCHOOL DISTRICT,
a political subdivision of the City of Belen, a
Municipal Corporation of the State of New Mexico,
SUPERINTENDENT MICHAEL GROSSMAN,
PRINCIPAL BARBARA ASHCRAFT, and
DAVID ULIBARRI, Individually,

Defendants.

## MEMORANDUM OPINION
## ON DEFENDANTS' MOTIONS TO DISMISS

This Matter comes before the Court on Defendant David Ulibarri's April 10, 2000 motion

to dismiss (Doc. 25) and Defendants City of Belen School District, Superintendent Michael

Grossman, and Principal Barbara Ashcraft's April 13, 2000 motion to dismiss (Doc. 31).  Having

reviewed the submissions of the parties and the relevant law, the Court finds that these motions

should be GRANTED IN PART and DENIED IN PART.

## FACTS

Plaintiff's complaint alleges equal protection and due process violations, negligence and

breach of fiduciary duty arising from a teacher's alleged sexual abuse of a girl ("Daughter") who

was his student.  Initial Pre-Trial Report at 2.  Daughter, through her mother, filed suit against the

City of Belen School District, Superintendent Michael Grossman, and Principal Barbara Ashcraft

("School Defendants"), and the teacher, Defendant David Ulibarri.  This Court is required to

accept as true all well-pleaded facts alleged in Plaintiff's complaint when addressing a Federal

Rule of Civil Procedure 12(b)(6) motion to dismiss.  *Yoder v. Honeywell Inc.*, 104 F.3d 1215,

1224 (10th Cir.), *cert. denied*, 522 U.S. 812, 118 S. Ct. 55 (1997); *Phelps v. Wichita Eagle-

Beacon*, 886 F.2d 1262, 1266 (10th Cir. 1989).  The Court will accept the following facts as true

for the purposes of this opinion:

In August 1996, Daughter was assigned to the third grade classroom at Gil Sanchez

Elementary School and her teacher was David Ulibarri.  The classroom was a remote portable

building separate from the main school building and was entered through a solid door without a

window.  Daughter alleges that beginning in September 1996, when she was nine years old,

Defendant Ulibarri sexually molested her while she was in his classroom.  In December 1996,

Defendant Ulibarri threatened Daughter with retaliation if she told anyone of the molestation.

Also in December 1996, following a meeting between Daughter's mother and Defendant

Ashcraft, where Mother discussed her suspicions regarding improper conduct by Defendant

Ulibarri, Plaintiff alleges that Defendant Ulibarri slammed a book shut on Daughter's hand

causing injury to Daughter.  Beginning in 1997, Daughter's scholastic performance deteriorated.

Mother apparently made complaints to school officials on February 17, 1997 and February 18,

1997 about the conduct of Defendant Ulibarri.  Daughter was removed from Defendant Ulibarri's

classroom in early 1997, but still had indirect contact with him at school.

Beginning in 1999, Daughter became more aware of the significance of the prior sexual

abuse and her health declined.  In April 1999 she was hospitalized for acts of self harm and a

suicide attempt.  In early 1999, Mother requested that Daughter be transferred to another school,

but School Defendants did not facilitate this transfer and told Mother she would have to pay the cost of transporting Daughter to another school.  Mother made arrangements for Daughter to attend a private school for the remainder of 1999.

Plaintiff alleges that other complaints against Defendant Ulibarri had been received by School Defendants from other young female students and School Defendants did not act to remove Defendant Ulibarri from contact with Daughter or other girls in the school.  Plaintiff did not identify any time frame for these other complaints, or specifically state any facts concerning the complaints.  Plaintiff also alleges School Defendants did not adequately train girls in the school to recognize sexual abuse nor did they train teachers or administrators to properly receive and investigate allegations of child sexual abuse.  Plaintiff filed suit alleging federal constitutional claims, a Violence Against Women Act claim, and claims of violations of state law.

## ANALYSIS

## I.  FEDERAL CONSTITUTIONAL CLAIMS (Counts One through Five)

Plaintiff brings five constitutional claims against Defendants.  Count One is an equal protection claim brought against Defendant Ulibarri and Count Two is an equal protection claim brought against School Defendants[1].  Counts Three, Four and Five are Due Process claims with all three brought against School Defendants and Count Three against Defendant Ulibarri.  Plaintiff brings these claims pursuant to the 14th Amendment and 42 U.S.C. § 1983.

---

[1]Count Two - Equal Protection Creation of Hostile and Dangerous Environment was originally alleged against Defendant Ulibarri as well but was dismissed on May 8, 2000 as agreed to by both parties.

All Defendants moved to dismiss the constitutional claims, alleging qualified immunity and failure to state a claim for the equal protection claims (Counts One and Two), and that all the claims (Counts One - Five) are barred by the statute of limitations.

**A.  Statute of Limitations**

Defendants argue that all the constitutional claims are barred by the applicable statute of limitations.  New Mexico's three-year personal injury statute of limitations, NMSA 1978, § 37-1-8, applies to § 1983 claims.  *See Wilson v. Garcia,* 471 U.S. 261, 266-80, 105 S. Ct. 1938 (1985).  All Defendants argue that the constitutional claims are barred because the alleged abuse occurred in September 1996 and Plaintiff filed her Complaint on February 9, 2000 - more than three years after the injury.  Defendant Ulibarri further argues that Plaintiff fails to allege facts sufficient for the Court to determine whether the claims are timely.  Plaintiff argues in response that her complaint sufficiently alleges that the abuse took place during the school year 1996-1997, and that the statute of limitations is tolled by NMSA 1978, §§ 37-1-10 and 37-1-30.

NMSA 1978, § 37-1-30 provides that "(A) An action for damages based on personal injury caused by childhood sexual abuse shall be commenced by a person before the latest of the following dates: (1) the first instant of the person's twenty-fourth birthday; or (2) three years from the date of the time that a person knew or had reason to know of the childhood sexual abuse and that the childhood sexual abuse resulted in an injury to the person . . . ."  NMSA 1978, § 37-1-30.  School Defendants argue in their Reply Brief that § 37-1-30(A)(2) does not toll Plaintiff's claims beyond three years after Plaintiff had reason to know of the sexual abuse.  School Def. Reply at 6.  This is incorrect because § 37-1-30 tolls the statute until the victim's twenty-fourth birthday if that date is later than the date three years after gaining knowledge of the abuse.  Therefore, § 37-

4

1-30 arguably tolls Plaintiff's constitutional claims.  However, no previous cases indicate that §

37-1-30 is properly applied to § 1983 claims.  In addition, it is unclear whether Plaintiff's claims

satisfy § 37-1-30 (B)[2].  Complaint at ¶ 60.

NMSA 1978, § 37-1-10 provides that the statute of limitations "for the preceding

provisions of the chapter shall, in favor of minors and incapacitated persons, be extended so that

they shall have one year from and after the termination of such incapacity within which to

commence said actions."  NMSA 1978, § 37-1-10.  All Defendants argue that § 37-1-10 only

applies to those causes of action specifically included in § 37, and has no application to other

claims, such as Plaintiff's § 1983 claims.  Defendant Ulibarri points to § 37-1-17, which states:

> None of the preceding provisions of this chapter shall apply to any action or suit which, by
> any particular statute of this state, is limited to be commenced within a different time, nor
> shall this chapter be construed to repeal any existing statute of the state which provides a
> limitation of any action; but in such cases the limitation shall be as provided by such
> statutes.

NMSA 1978, § 37-1-17.  Defendant Ulibarri also cites *Lent v. Employment Sec. Comm.*, 658

P.2d 1134, 1140 (N.M. App. 1982), where the court refused to apply § 37's tolling provision to

claims brought under New Mexico's worker's compensation statute NMSA § 52-1-3.  In that

case the court noted that New Mexico's worker's compensation statute "unambiguously states a

time limitation and provides no exceptions to the limitation."  *Lent* at 1140.  In this case,

however, Plaintiff's constitutional claims are brought under § 1983, which contains no statute of

limitations.  The *Lent* court's analysis is therefore not applicable to this case.

---

[2]§ 37-1-30(B) states: "As used in this section, 'childhood sexual abuse' means behavior
that, if prosecuted in a criminal matter, would constitute a violation of: (1) § 30-9-11 NMSA
1978, regarding criminal sexual penetration of a minor; (2) § 30-9-13 NMSA 1978, regarding
criminal sexual contact of a minor; or (3) the Sexual Exploitation of Children Act [30-6A-1 to
30-6A-4 NMSA 1978].

Defendant Ulibarri also cites *Slade v. Slade*, 468 P.2d 627 (N.M. 1970), which held that §
37's tolling provisions did not apply when the plaintiff filed a complaint "in favor of" her minor
son, because the action was not actually in favor of a minor but was based upon a prior judgment
in her favor. *Id.* at 631. Plaintiff here is not asserting an independent action, and applying a
tolling provision on Daughter's behalf is therefore not contrary to *Slade*.

Since Defendants' precedent is inapposite, the Court concludes Plaintiff is correct in
asking that § 37-1-10 be applied to her § 1983 claims. This Court in *Desert State Life
Management Services v. Ass'n of Retarded Citizens*, 939 F. Supp. 835, 837 (D. N.M. 1996)
found that § 37-1-10 tolls § 1983 claims. Furthermore, under *Regents v. Tomanio*, 446 U.S. 478
(1980), federal courts borrow any applicable state-law tolling provisions unless the provision is
inconsistent with federal policy. *Id.* at 485. The 10th Circuit's reasoning in *Garcia v. Wilson*, 731
F.2d 640 (10th Cir. 1984), *aff'd*, 471 U.S. 261 (1985), confirms that applying the tolling provision
of § 37-1-10 is not inconsistent with federal policy. In *Garcia* the Court extensively evaluated
how other circuits applied statutes of limitations to § 1983 claims and found that state limitations
periods "applicable to suits against state and local officials may well be motivated by a legislative
desire to limit the liability of the public entity employer," which is in contrast with the remedial
purpose of § 1983. *Garcia* at 649. Thus, the Court found the longer statute of limitations in §
37, rather than the two-year statute of limitations in New Mexico's Tort Claims Act, NMSA
1978, § 41-4-15, should apply to all § 1983 claims in New Mexico. *Id.* at 643. Given the *Garcia*
opinion's emphasis on the remedial purposes behind § 1983, and on allowing such claims to
proceed rather than limiting the liability of public officials, the tolling provision of § 37-1-10 is
consistent with the federal policy underlying § 1983, and correctly applies to Plaintiff's § 1983

6

claims.  Since Daughter is a minor, § 37-1-10 tolls the statute of limitations for the equal

protection and due process claims against Defendant Ulibarri and the School Defendants.

### B.  Counts One and Two: Failure to state a claim and qualified immunity

Defendant Ulibarri moves to dismiss Count One - Equal Protection, and School

Defendants move to dismiss Count Two - Equal Protection: Creation of a Hostile Environment,

alleging qualified immunity and that Plaintiff fails to state a claim.

### 1.  Equal Protection claim against Defendant Ulibarri

Qualified immunity shields state actors from suit unless their conduct violates "clearly

established statutory or constitutional rights."  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982);

*Woodward v. City of Worland*, 977 F.2d 1392, 1396 (10th Cir. 1992).  The threshold issue to

resolve is whether Plaintiff's allegations state a claim for violation of any constitutional rights.

*Maldonado v. Josey*, 975 F.2d 727, 729 (10th Cir. 1992).  Defendant Ulibarri argues that Plaintiff

must identify a legislative classification and show that she was treated differently than others

similarly situated to state a claim under the Equal Protection Clause.  Mot. to Dismiss at 5, citing

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) and *Landmark Land Co. of Oklahoma v.*

*Buchanan*, 874 F.2d 717 (10th Cir. 1989).  Plaintiff is correct, however, in responding that "'equal

protection' of the law goes well beyond impermissible legislative classifications."  Plaintiff's Reply

at 6.  The purpose of § 1983 is to deter state actors from using their authority to deprive

individuals of their constitutional and statutory rights, and the key to holding a state actor liable

for this deprivation is whether there is a "real nexus" between the employee's use of authority and

the violation.  *D.T. by M.T. v. Independent School District No. 16*, 894 F.2d 1176, 1188 (10th Cir.

1990); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  In *D.T. by M.T.* the Court rejected the

7

plaintiff's equal protection claims because a teacher abused a student during extra-curricular activities not related to the teacher's or the student's school duties and thus the teacher was not acting under color of state law. *Id.* at 1188. Here Plaintiff states in her complaint that Defendant misused his supervisory powers to abuse her on more than one occasion on school grounds during the performance of his official duties, which satisfies Plaintiff's burden of stating a claim for violation of the right to equal protection. *Starrett v. Wadley*, 876 F.2d 808, 815 (10th Cir. 1989); *see also Vigil v. Mesa Vista Consolidated School District*, CIV 97-00151 (D. N.M. Dec. 18, 1997) (Court found that plaintiff sufficiently alleged a violation of her Fourteenth Amendment right to Equal Protection when she claimed that her teacher repeatedly asked her for sex and tried to touch her while they were at school).

Defendant is entitled to qualified immunity from Plaintiff's constitutional claims if Plaintiff cannot establish that the constitutional rights she claims were violated were clearly established at the time of defendant's conduct. *Woodward v. City of Worland* at 1396. Plaintiff has the burden to present a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts; however, this does not mean that plaintiff must cite case law that contains the identical fact situation. *See Anderson v. Creighton*, 483 U.S. 635, 640, 108 S. Ct. 3034 (1987); *Murrell v. School District No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999); *Medina v. City and County of Denver*, 960 F2d 1492, 1498 (10th Cir. 1992). Defendant Ulibarri states that the law was not clearly established in 1996 that an individual in these circumstances could be held liable for an equal protection claim. However, as Plaintiff points out, the 10th Circuit established in *Starrett* that sexual harassment is an equal protection violation actionable under § 1983. Even though *Starrett* involved equal protection rights in an employment context, the 10th Circuit has

found that it established a legal principle applicable to a situation where a teacher is accused of sexually harassing a student. *Murrell* at 1249 ("It is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause"); *see also Johnson v. Martin*, 195 F.3d 1208, 1216-1217 (10th Cir. 1999). Plaintiff's equal protection claim against Defendant Ulibarri therefore is clearly established and has been pleaded sufficiently. Defendant Ulibarri's motion to dismiss the equal protection claim against him will be DENIED.

### 2. Equal Protection claim against School Defendants

In order to establish that the Belen School District is liable for sexual harassment under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must demonstrate that the School District had an official policy or tolerated a custom which resulted in the deprivation of Plaintiff's constitutional right. *See Monell v. Department of Social Services*, 436 U.S. 658, 690; *see also Vigil v. Mesa Vista Consolidated School District*. To establish the School District tolerated a custom, the custom must be permanent and well settled. *Monell* at 691. While Plaintiff vaguely alleges that there were other girls that Defendant Ulibarri molested, this vague allegation is insufficient to raise a claim that the School District had a custom of tolerating his alleged behavior, especially since Plaintiff fails to state when the other molestations took place or how the School District might have been aware of them. *See, e.g., Vialpando v. Ritter*, 1995 WL 228246 (10th Cir.) (vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss).[3] Defendant further notes that acts

---

[3]Plaintiff does make another vague and conclusory allegation, to the effect that Defendant Ulibarri "behaved inappropriately" with his young female students, and that his behavior became known to the school community. Again, there is no indication when this occurred, or what the inappropriate behavior consisted of, and the allegation is insufficient to establish the requisite custom or policy. *See Vialpando*.

of sexual harassment by a student directed solely at one individual "do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter." *Murrell* at 1250 citing *Monell* at 691 & n. 56.  Without more specificity in Plaintiff's Complaint indicating that the School District was aware of any misconduct by Defendant Ulibarri before the District received actual knowledge of Plaintiff's complaint concerning Defendant Ulibarri, this Court cannot find that the School District had an official policy or custom that resulted in the deprivation of Plaintiff's constitutional rights.

Regarding the individual school defendants, Principal Ashcraft and Superintendent Grossman, Plaintiff must sufficiently plead that their actions constituted deliberate indifference to Plaintiff's constitutional rights.  *Woodward* at 1399; *Murrell* at 1250.  To state a claim of deliberate indifference Plaintiff must allege that the Principal and Superintendent had actual knowledge of Defendant Ulibarri's behavior and did not reasonably respond to it.  *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995).  Plaintiff argues that Principal and Superintendent did not take reasonable remedial action after they had actual notice of Defendant Ulibarri's alleged misconduct.  Since Plaintiff claims Principal Ashcraft had actual knowledge of Mother's suspicions of the abuse in December 1996, but did not investigate the claims or act to remove Daughter from the classroom until February 1997, she sufficiently claims Principal Ashcraft showed deliberate indifference towards Daughter.  Complaint at ¶ 32; *Johnson v. Martin* at 1219 (where "a supervisor had actual knowledge of the harassment but failed to take any remedial action (e.g., by investigating the allegations and taking disciplinary action against the harassing subordinate employee), courts have concluded that the supervisor may be held liable.").  In addition, Principal Ashcraft is not entitled to qualified immunity from this claim because it was

clearly established that a supervisor could be liable under § 1983 for an employee's sexual abuse. *See D.T. by M.T.* at 1189.

Plaintiff claims that Superintendent Grossman was informed of the abuse in February 1997, that Daughter was removed from Defendant Ulibarri's classroom after the misconduct was reported to him, and does not allege that any misconduct occurred after she was removed from Defendant Ulibarri's classroom. The issue with Superintendent Grossman, therefore, is whether removing Plaintiff from Defendant Ulibarri's classroom constitutes a reasonable remedy. The Court found in *Johnson* that it was not a reasonable remedy for a supervisor to inform a department head of the alleged harassment when the harassment continued for years anyway. *Id.* at 1219. Another supervisor in *Johnson* was also found liable because he refused to take any action for years after actual knowledge of sexual harassment by an employee. *Id.* at 1219. Further, the Court in *Murrell* concluded that the principal and teachers were deliberately indifferent to a student's sexual harassment of another student by refusing to take any action to stop the harassment. Thus, since the superintendent took remedial action as soon as he had actual knowledge of the allegations of abuse, and since the misconduct stopped after he took this action, Plaintiff does not sufficiently allege deliberate indifference by Superintendent Grossman.

Plaintiff also claims that the School Defendants violated her equal protection rights by failing to train teachers and students. Plaintiff relies on *Sutton v. Utah School for the Deaf and Blind*, in which the Court actually addressed a claim for violation of due process, not equal protection. 173 F.3d 1226, 1237 n.11 (10th Cir. 1999). Regardless, the facts of that case are distinguishable. The principal there was given detailed information about an assailant and the location of the past incidents, and yet the plaintiff, who was severely disabled, was still abused in

the same location by the same person after the principal was informed.  *Id.* at 1240.  The Court found the principal failed to adequately train staff to prevent sexual molestation and noted that the plaintiff's claims were sufficient "in light of the repeated notification to (the principal), as pled, of notice that (plaintiff), with all his impairments, had been subjected to repeated sexual assaults by the much larger boy . . . ." *Id.* at 1240.  Here, the Superintendent did not receive repeated notification, and he took immediate action after receiving notice so that the alleged abuse ended.  Therefore, the motion to dismiss Plaintiff's equal protection claims against Principal Ashcraft will be DENIED, and the motion to dismiss the equal protection claims against Superintendent Grossman and Belen School District are GRANTED.

## II.  VIOLENCE AGAINST WOMEN ACT CLAIM (Count Six)

In count six Plaintiff asserts a claim of violation of the Violence Against Women Act ("VAWA") against Defendant Ulibarri.  42 U.S.C. § 13981.  Ulibarri moves to dismiss this claim with two arguments; that Plaintiff fails to allege a predicate felony that includes an element of violence and that VAWA is unconstitutional as applied to Ulibarri.  This Court need not address whether Plaintiff sufficiently stated a claim under VAWA because the United States Supreme Court recently ruled that neither the Commerce Clause nor the enforcement clause of the Fourteenth Amendment provided Congress with the authority to enact the civil remedy provision (c) of § 13981 of the act.  *United States v. Morrison*, 120 S. Ct. 1740 (May 14, 2000).  Since the civil remedy provision of § 13981 has been found unconstitutional, Defendant Ulibarri's motion to dismiss Plaintiff's VAWA claim is GRANTED.

## III.  STATE LAW CLAIMS

Plaintiff alleges violations of state law in Count Seven - Sexual Abuse and Criminal Sexual Contact of a Minor against Defendant Ulibarri, Count Eight - Negligence against all Defendants, and Counts Nine and Ten - Breach of Fiduciary Duty against all Defendants.        **A.  New Mexico Tort Claims Act (Counts Seven and Eight): Statute of Limitation**

In her dissent in *Wilson v. Garcia*, Justice O'Connor critiqued the Court's decision adopting individual states' personal-injury statutes of limitation for § 1983 claims, because doing so may result in different statutes of limitation for state-law claims arising from the same set of facts.  471 U.S. 261.  She stated:

> True, the Court's decision means that all § 1983 claims in a given State must be brought within a single set period. Yet even the promise of uniformity within each State is illusory. In achieving statewide symmetry among civil rights claims the Court creates fresh problems of asymmetry. . . .  Any lawyer knows that § 1983 claims do not occur in splendid isolation; they are usually joined with claims under state tort or contract law arising out of the same facts.

*Id.* at 285.  This Court is now faced with the factual situation contemplated by Justice O'Connor, because all Defendants have moved to dismiss Plaintiff's state claims for failure to meet the two-year statute of limitations applicable to claims brought under the N.M. Tort Claims Act, § 41-4-15(A).  Neither New Mexico's personal injury statute of limitations, § 37-1-8, nor the tolling provision in § 37-1-10, apply to these state claims because the Tort Claims Act includes a time limitation and provides a tolling provision for minors under the age of seven.  As discussed above, in *Lent* the New Mexico Court of Appeals clearly held that tolling provisions from § 37 do not apply to statutes containing their own time limitations.  *Lent* at 413, 658 P.2d 1140.  That Court addressed an equal protection and due process challenge to the application of § 41-4-15(A) to an incapacitated individual in *Jaramillo v. State of N.M.*, 809 P.2d 636 (Ct. App. 1991).  The court

13

found that the limitation was not unconstitutional because it applies when the defendant is a governmental entity and thus protects state interests in predicting and controlling potential liabilities. *Id.* at 640. Since no § 37 tolling provision applies here, and § 41-4-15(A) is constitutional even if applied to persons under a legal disability, the two-year limitations period applies to any claim brought under the Tort Claims Act. All parties here agree that Counts Seven and Eight fall under the Tort Claims Act; therefore they are barred by § 41-4-15(A) because they were not brought within two years of the injury. Defendants' motions to dismiss Counts Seven and Eight are GRANTED.

### B. Breach of Fiduciary Duty (Counts Nine and Ten)

All Defendants move to dismiss Plaintiff's breach of fiduciary duty claims. Defendant Ulibarri argues that there are no New Mexico appellate opinions that find a teacher has a fiduciary duty to a student. Plaintiff argues that a fiduciary relationship "can exist in almost any context." *Moody v. Sribling*, 985 P.2d 1210, 1216 (Ct. App. 1999). However, in order to state a claim for a fiduciary relationship, Plaintiff must still allege that "'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.'" *Moody* at 1222, *quoting Allsup's Convenience Stores, Inc.*, 976 P.2d 1, 15 (N.M. 1998). Plaintiff fails to sufficiently allege that Defendant Ulibarri had a duty, created by his undertaking, to act primarily for Plaintiff's benefit in matters connected with such undertaking. *See, e.g., Zumbrun v. University of S. California*, 101 Cal.Rptr. 499, 506 (Ct. App. 1972) (finding "the mere placing of trust in another person does not create a fiduciary relationship."). While *Moody* found a fiduciary relationship between in-laws, and noted that a relationship of trust and confidence was essential in such a finding, that case

14

involved the fiduciary becoming deeply involved with the day-to-day finances and personal affairs of the beneficiary. *Id.* at 1223. Defendant Ulibarri did maintain a position of supervision over Plaintiff, however this falls short of the special confidence and personal involvement in Plaintiff's financial and personal life required to establish a fiduciary relationship.

Plaintiff also attempts to argue that Defendant Ulibarri's statutory duties or common law *in loco parentis* status fulfill the definition for a fiduciary. Plaintiff cites *Fevig v. Fevig*, 559 P.2d 839 (N.M. 1977), which holds that "a person is said to stand in loco parentis when he puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formalities necessary to a legal adoption." *Id.* at 841. Plaintiff fails to note that *Fevig* also requires the person *in loco parentis* "must intend to assume toward the child the status of a parent." *Id.* Plaintiff does not allege that Defendant Ulibarri intended to assume the status of a parent.

Law students and legal commentators have increasingly argued that the relationship between teachers and students should be considered a fiduciary relationship. *See, e.g.,* Neera Rellan Stacy, Note, *Seeking a Superior Institutional Liability Standard Under Title IX for Teacher-Student Sexual Harassment*, 71 N.Y.U.L.Rev. 1338, 1372-73 (1996); Timothy Davis, *Examining Educational Malpractice Jurisprudence: Should a Cause of Action Be Created for Student-Athletes?*, 69 Den.U.L.Rev. 57, 94 (1992) ("quasi-fiduciary relationship is created..."); Micah Dawn Miller, Note, *When Teachers Sexually Abuse Children: The School District's Duty to Investigate*, 43 Okla.L.Rev. 687, 699-701 (1990) (discussing "special relationship" theory); Phyllis Coleman, *Sex in Power Dependency Relationships: Taking Unfair Advantage of the "Fair" Sex*, 53 Alb.L.Rev. 95, 119 (1988); Ronna Greff Schneider, *Sexual Harassment and*

*Higher Education,* 65 Tex.L.Rev. 525, 552 (1987).  The courts, however, continue to reject the

fiduciary label in the student-teacher context.  *See Ho v. Univ. of Texas*, 984 S.W.2d 672, 693

(Tex.Civ.App. 1998); *Shapiro v. Butterfield*, 921 S.W.2d 649, 651-52 (Mo.App. 1996);

*Williamson v. Bernstein*, 1996 Mass. Super. Lexis 673 (1996); *Abrams v. Mary Washington*

*College*, 1994 WL 1031166 (Va.Cir. 1994); *cf. Shaffer v. The Guardian Life Ins. Co.*, 986

F.Supp. 1066, 1068 (S.D.Tex. 1997) (recognizing the logical extension of plaintiff's argument

would be to "infer a fiduciary duty in a limitless array of relationships, including teacher-student ...

Such a result would be completely unacceptable...").  This Court is not prepared to ignore such

precedent and find a fiduciary relationship under the circumstances of this case.

Moreover, even if this Court were to find a fiduciary relationship between Plaintiff and

Defendants, Plaintiff's fiduciary duty claims still fail to hurdle the twin barriers of sovereign

immunity and the New Mexico Tort Claims Act.  Initially, it is not clear whether Plaintiff raises

these claims as a breach-of-contract matter or a tort claim.  If it is a contract claim it must be

supported by a written contract.  Claims based in contract are only actionable against a

governmental entity or its officials if there is a valid written contract.  NMSA 1978, § 37-1-23.

Plaintiff would avoid this requirement by citing NMSA 1978, § 37-1-24, which states that claims

may be pursued against "any city, town or village in this state, or . . . any officer as such of any

such city, town or village in this state, arising out of or founded upon any ordinance, trust relation

or contract written or unwritten."  § 37-1-24.  Read together, the two statutes indicate that

contract claims may be brought against municipal entities or officers even if they are not based on

a written contract; against other governmental entities, however, contract claims are only allowed

if there is a written contract upon which the claim is based.  Thus, Plaintiff necessarily argues that

Defendant Belen School District is a municipal entity, and that her fiduciary duty claims are therefore actionable even though she does not have a written contract with Defendants.

Defendants point out New Mexico courts have previously applied only § 37-1-23, and not § 37-1-24, to contract actions against school districts. *See Swinney v. Deming Board of Education*, 117 NM 492 (1994); *Ballard v. Chavez*, 117 N.M. 1 (1994); *Carrillo v. Rostro*, 114 N.M. 607 (1992). Plaintiff, meanwhile, has cited to no case that applies § 37-1-24 to a school district or its officers. Plaintiff does, however, claim *Duke v. Grady Municipal Schools*, 127 F.3d 972 (10th Cir. 1997), and *Daddow v. Carlsbad Mun. Sch. Dist.*, 120 N.M. 97, 898 P.2d 1235, (N.M. 1995), *cert. denied*, 516 U.S. 1067, 133 L.Ed. 2d 700, 116 S.Ct. 753 (1996), say a local school board is a city, town or village, which would make § 37-1-24 the appropriate provision to apply to this case. However, *Duke* and *Daddow* hold only that a local school board is not an "arm of the state" for § 1983 purposes. In so holding, *Daddow* specifically discusses the status of local school boards as local public bodies, on a par with municipalities or counties. *See, e.g.,* 120 N.M. at 105 ("School districts operate independently, like counties and municipalities."). It is here Plaintiff's syllogism breaks down. The mere fact that a local school board is not an arm of the state does not mean it is a city, town, or village. Instead, it is an independent governmental entity entitled to the protection of § 37-1-23. Thus, if Plaintiff's breach-of-trust claim is considered a contract claim, it is barred.

Alternatively, if the claim is deemed a tort claim, it is barred because the Tort Claims Act does not waive immunity for such torts. *See, e.g., Rubio ex rel. Rubio v. Carlsbad Mun. Sch. Dist.*, 744 P.2d 919, 921 (N.M.App. 1987) (no waiver of immunity for "educational malpractice"

or negligent hiring).  Defendants' motions to dismiss Plaintiff's breach of fiduciary duty claims are therefore GRANTED.

## <u>CONCLUSION</u>

Defendant Ulibarri's motion to dismiss Plaintiff's equal protection and due process claims will be DENIED.  School Defendants' motion to dismiss Plaintiff's due process claims will be DENIED.  Principal Ashcraft's motion to dismiss Plaintiff's equal protection claim will be DENIED.  Belen School District and Superintendent Grossman's motion to dismiss Plaintiff's equal protection claims will be GRANTED.  All Defendants' motions to dismiss Plaintiff's state law claims and Violence Against Women Act claim will be GRANTED.


DATED August 10, 2000.


BRUCE D. BLACK
United States District Judge

18

Counsel for Plaintiff:
Mark M. Rhodes, Albuquerque, NM

Counsel for Defendants City of Belen School District, Michael Grossman and Barbara Ashcraft:
Henry F. Narvaez and H. Nicole Schamban, Albuquerque, NM

Counsel for Defendant David Ulibarri:
Elizabeth L. German and Brian A. Thomas, Albuquerque, NM